UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| GLENN A. WILLIAMS,<br><br>              Petitioner,<br><br>    v.<br><br>JEFFEREY BEARD, Warden,<br><br>              Respondent. | No. CV 15-4646-PLA<br><br>**MEMORANDUM DECISION AND ORDER** |

**I.**

**SUMMARY OF PROCEEDINGS**

On March 6, 2013, a Los Angeles County Superior Court jury convicted petitioner of one count of second-degree robbery, in violation of California Penal Code section 211, and one count of assault with a firearm, in violation of California Penal Code section 245. (Clerk's Transcript ["CT"] 92-93). The jury also found that petitioner used a firearm within the meaning of California Penal Code section 12022.53. (Id.). Petitioner was sentenced to a term of fifteen years in state prison. (Id. at 112-13).

Petitioner filed a direct appeal. (Lodgment Nos. 3-5). On April 21, 2014, the California Court of Appeal affirmed the conviction. (Lodgment No. 6). Petitioner subsequently filed a petition

for review in the California Supreme Court, which was denied without comment on July 9, 2014. (Lodgment Nos. 7-8).

On June 18, 2015, petitioner filed his Petition in this Court, and consented to have the undersigned Magistrate Judge conduct all further proceedings in this matter. (Docket Nos. 1, 8). Respondent, likewise, consented to have the undersigned Magistrate Judge conduct all further proceedings and, thereafter, filed an Answer and Return and a supporting Memorandum of Points and Authorities ("Answer"). (Docket Nos. 13-15). When petitioner did not timely file a Reply, the Court, on November 17, 2015, ordered petitioner to file a Reply no later than December 17, 2015, and advised petitioner that failure to file a Reply may result in the allegations in the Return being accepted as true. The Court then granted two extensions of time for petitioner to file his Reply, with the latest extension setting the due date as February 22, 2016. As of this date, petitioner has failed to file a Reply.

This matter has been taken under submission, and is ready for a decision.

## II.

## **FACTUAL BACKGROUND**

The Court adopts the factual summary set forth in the California Court of Appeal's Opinion affirming petitioner's conviction. To the extent that an evaluation of petitioner's claim depends on an examination of the trial record, the Court herein has made an independent evaluation of the record specific to the claim.

> Evangelina Rivera testified that as she got into her car at 5:40 a.m., a man pulled her car door open, held a gun to her temple, and demanded money. She gave him a bag that held approximately $300 in cash, her debit card, credit card, Target card, identification card, and health insurance card. She refused to give him her car keys. The man hit her seven times on the head with the gun and then ran to a waiting car.
> Part of the man's face was covered by a hood and a handkerchief during the robbery. Rivera remembered his eyes, his ears, his short hair, his size, and his hooded jacket. She did not notice a facial tattoo.
> Rivera identified [petitioner] in a photo line-up in which each man had a black rectangle covering the position of [petitioner's] facial tattoo. She also identified [petitioner] in court. She identified a gun

> that [petitioner] had when he was arrested as looking like the gun used in the robbery.
>
> Rivera's cards were found in the street about two hours after she was robbed. A fingerprint on the back of her Target card matched [petitioner's].
>
> During voir dire, defense counsel questioned prospective jurors about [petitioner's] appearance, including his tattoos. Some jurors said they had noticed [petitioner's] tattoos, some said they had tattoos themselves and had no negative opinions about them, and one juror said tattoos made him (or her) think of a gang. The trial court admonished the jurors not to judge anyone by their tattoos and reminded them that many basketball players have tattoos. When counsel asked if jurors had "problems" with [petitioner's] tattoos, Juror No. 8 responded, "I didn't see any tattoos. I'm sorry. I wasn't looking for that specifically . . . and I was in back, so I don't know if -- I can't see him from here either, so – " Juror No. 9 said, "I haven't noticed any on that particular person."
>
> In closing argument, the prosecutor said, "[Defense counsel is] going to tell you it can't be his client because the women didn't see any . . . tattoos on his face.[1] But I'll point out this, ladies and gentlemen, the juror seated in seat No. [8] said herself in the course of the voir dire process when both counsel and I had an opportunity to talk with you that she couldn't see the tattoos on the defendant's face when she has been in the same courtroom, under much better lighting, and certainly under different circumstances."
>
> Defense counsel objected. The trial court sustained the objection, struck the statement, and admonished the jurors: "The answers you gave during jury selection are not part of the evidence of the trial, so you cannot consider that. All right. So just ignore those comments."
>
> The prosecutor continued, "To expect two women who were just robbed at gunpoint in the early hours of the morning while it was still dark out to notice small facial tattoos written in black on this defendant's face is not quite as significant as the defense would like you to believe."

(Lodgment No. 6 at 1-3 (original footnote renumbered)).

## III.

## PETITIONER'S CONTENTION

The prosecutor violated petitioner's rights to due process, to a fair trial, and to an impartial jury by quoting one of the juror's voir dire responses in his closing argument to show that the victim's identification of petitioner was reliable. (Pet., Memo. Points & Auth. at 15).

---

[1] Another woman testified that she was robbed about 30 minutes before Rivera in the same general area. The jury acquitted petitioner of that charge. She did not see any tattoos and did not identify petitioner in a photo line-up.

3

# IV.

## **STANDARD OF REVIEW**

The Petition was filed after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA"). Pub. L. No. 104-132, 110 Stat. 1214 (1996). Therefore, the Court applies the AEDPA in its review of this action. See Lindh v. Murphy, 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

Under the AEDPA, a federal court may not grant a writ of habeas corpus on behalf of a person in state custody "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). As explained by the Supreme Court, section 2254(d)(1) "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In Williams, the Court held that:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13; see Weighall v. Middle, 215 F.3d 1058, 1061-62 (9th Cir. 2000) (discussing Williams). A federal court making the "unreasonable application" inquiry asks "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409; Weighall, 215 F.3d at 1062. The Williams Court explained that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously

4

1  or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411;
2  accord: Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003). Section
3  2254(d)(1) imposes a "highly deferential standard for evaluating state-court rulings," Lindh, 521
4  U.S. at 333 n. 7, and "demands that state court decisions be given the benefit of the doubt."
5  Woodford v. Visciotti, 537 U.S. 19, 123 S.Ct. 357, 360, 154 L.Ed.2d 279 (2002) (per curiam). A
6  federal court may not "substitut[e] its own judgment for that of the state court, in contravention of
7  28 U.S.C. § 2254(d)." Id.; Early v. Packer, 537 U.S. 3, 123 S.Ct. 362, 366, 154 L.Ed.2d 263
8  (2002) (per curiam) (holding that habeas relief is not proper where state court decision was only
9  "merely erroneous").

10  The only definitive source of clearly established federal law under the AEDPA is the
11  holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision.
12  Williams, 529 U.S. at 412. While circuit law may be "persuasive authority" for purposes of
13  determining whether a state court decision is an unreasonable application of Supreme Court law
14  (Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999)), only the Supreme Court's holdings
15  are binding on the state courts and only those holdings need be reasonably applied. Williams, 529
16  U.S. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.), cert. denied, 540 U.S. 968 (2003).
17  Furthermore, under 28 U.S.C. § 2254(e)(1), factual determinations by a state court "shall be
18  presumed to be correct" unless the petitioner rebuts the presumption "by clear and convincing
19  evidence."

20  A federal habeas court conducting an analysis under § 2254(d) "must determine what
21  arguments or theories supported, or, [in the case of an unexplained denial on the merits], could
22  have supported, the state court's decision; and then it must ask whether it is possible fairminded
23  jurists could disagree that those arguments or theories are inconsistent with the holding in a prior
24  decision of [the Supreme Court]." Harrington v. Richter, 526 U.S. 86, 101, 131 S.Ct. 770, 178
25  L.Ed.2d 624 (2011) ("A state court's determination that a claim lacks merit precludes federal
26  habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's
27  decision."). In other words, to obtain habeas relief from a federal court, "a state prisoner must
28  show that the state court's ruling on the claim being presented in federal court was so lacking in

1  justification that there was an error well understood and comprehended in existing law beyond any
2  possibility for fairminded disagreement." Id. at 103.

3        The United States Supreme Court has held that "[w]here there has been one reasoned
4  state judgment rejecting a federal claim, later unexplained orders upholding that judgment or
5  rejecting the same claim rest upon the same ground." Ylst v. Nunnemaker, 501 U.S. 797, 803,
6  111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). Here, petitioner presented his sole ground for relief on
7  appeal to the California Court of Appeal, which issued a reasoned opinion rejecting that ground.
8  (See Lodgment Nos. 3-6). Thereafter, the California Supreme Court summarily denied that
9  ground. (See Lodgment No. 8). Accordingly, this Court reviews the California Court of Appeal's
10 reasoned opinion rejecting petitioner's ground for relief under AEDPA's deferential standard. See
11 Ylst, 501 U.S. at 803; Shackleford v. Hubbard, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000) (district
12 court "look[s] through" unexplained California Supreme Court decision to the last reasoned
13 decision as the basis for the state court's judgment).

**V.**

**DISCUSSION**

17       In his sole ground for relief, petitioner asserts that the prosecutor committed misconduct
18 that violated petitioner's rights to due process, to a fair trial, and to an impartial jury. (Pet., Memo.
19 Points & Auth. at 15). Specifically, petitioner faults the prosecutor for quoting Juror No. 8's voir
20 dire response in his closing argument to show that the victim's identification of petitioner was
21 reliable, despite the victim's failure to notice petitioner's facial tattoo. (Id. at 16-19). Although
22 petitioner acknowledges that the trial court both sustained an objection to the prosecutor's
23 comment and instructed the jury to disregard it, petitioner nevertheless contends that the trial
24 court's efforts to rectify the prosecutor's comments were insufficient to eliminate the resulting
25 prejudice. (Lodgment No. 3 at 13). In support of this contention, petitioner notes that the primary
26 contested issue at trial was the identity of the victim's assailant. (Id. at 12). Given this fact,
27 petitioner posits that the jury would have been unable to disregard the prosecutor's comment

because that comment struck at the heart of the issue of the assailant's identity. (See id. at 12-14). Consequently, petitioner believes that, despite the trial court's admonition, the prosecutor effectively was able to use Juror No. 8's observations to blunt defense counsel's efforts to discredit the victim's identification of petitioner. (Id.).

### A. California Court of Appeal Opinion

The California Court of Appeal rejected petitioner's prosecutorial misconduct challenge on its merits. (Lodgment No. 6 at 3-4). In doing so, the court of appeal acknowledged that the prosecutor had committed misconduct in quoting Juror No. 8's voir dire statement. (Id. at 3). Notwithstanding that fact, the court of appeal concluded that there was "no reasonable probability that the [prosecutor's] comment affected the outcome." (Id. at 3). Although the court of appeal agreed with petitioner that "[i]dentity was an important issue in this case," the court of appeal nevertheless observed that "the prosecutor's comments left the jury free to weigh the evidence and to deliberate with open minds about that question." (Id.). The court of appeal also stated that "the prosecutor and the trial court reminded the jurors to evaluate the case based on the evidence and to keep an open mind during deliberations. Further, the court struck the prosecutor's comment about Juror No. 8 and admonished the jurors to disregard it." (Id. at 4).

The court of appeal then addressed petitioner's argument that the trial court's admonition was insufficient to address the prejudice of quoting the juror's sworn voir dire statement because, according to petitioner, the juror effectively testified that the tattoo was not visible. (Id. at 4). In rejecting this argument, the court of appeal noted that, contrary to petitioner's assertions, Juror No. 8 never swore under oath that petitioner's tattoo was not visible; rather, she simply stated that she had not seen it and, further, that she could not see him at all from her vantage point in the courtroom. (Id.). The court of appeal then noted that there was no authority supporting petitioner's argument that the prosecutor's comment warranted an admonition other than the one that the trial court gave. (Id.). Citing other cases in which the use of a juror's voir dire statements were held to be non-prejudicial in the absence of any admonitions, the court of appeal reasoned that the prosecutor's statement here, which drew an admonition, was, likewise, not prejudicial. (Id. at 3-4).

7

### B. Federal Legal Standard and Analysis

Allegations of prosecutorial misconduct are governed by the standard set forth by the Supreme Court in Darden v. Wainwright, 477 U.S. 168, 181, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986); see Parker v. Matthews, __ U.S. __, 132 S. Ct. 2148, 2153, 183 L. Ed. 2d 32 (2012) (per curiam) (identifying Darden as "[t]he 'clearly established Federal law'" relevant to claims of prosecutorial misconduct arising from prosecutor's closing arguments). In Darden, the Supreme Court explained that prosecutorial misconduct does not rise to the level of a constitutional violation unless it "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden, 477 U.S. at 181 (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974)); Comer v. Schriro, 480 F.3d 960, 988 (9th Cir. 2007). To determine whether a prosecutor's comments amount to a due process violation, the reviewing court must examine the entire proceedings so that the prosecutor's remarks may be placed in their proper context. Boyde v. California, 494 U.S. 370, 384-85, 110 S. Ct. 1190, 108 L. Ed. 2d 316 (1990).

In making this determination, the reviewing court must be mindful that the standard set forth in Darden is a "very general one." Parker, 132 S. Ct. at 2155. Consequently, it "leav[es] courts more leeway . . . in reaching outcomes in case-by-case determinations." Id. (citations and internal quotations omitted). Thus, to establish that a state court's application of the Darden standard is unreasonable, the petitioner must show that the state's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Parker, 132 S. Ct. at 255. Assuming, however, that a petitioner can establish that the prosecutor engaged in misconduct, habeas relief nevertheless is unwarranted unless the petitioner can show that the misconduct had a substantial and injurious impact on the jury's verdict. Karis v. Calderon, 283 F.3d 1117, 1128 (9th Cir. 2002) (citing Brecht v. Abrahamson, 507 U.S. 619, 638, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993)).

In assessing the prejudicial impact of a prosecutor's improper comment, courts consider any curative steps taken by the trial court to address the comment. Hein v. Sullivan, 601 F.3d 897, 912-13 (9th Cir. 2010) (identifying curative steps taken by judge as factor in determining

whether prosecutor's improper comments deprived petitioner of fair trial). Absent extraordinary circumstances, a jury is presumed to follow an instruction to disregard irrelevant or improper comments to which it is exposed. See Greer v. Miller, 483 U.S. 756, 766 n.8, 107 S. Ct. 3102, 97 L. Ed. 2d 618 (1987). Accordingly, when a trial court timely admonishes the jury to disregard a prosecutor's improper comments, a due process claim based on the purported impropriety will typically fail. See id. at 765-66 (explaining that sequence of single question, immediate objection, and curative instructions "clearly" indicated the prosecutor's improper question did not violate due process); Turner v. Marshall, 63 F.3d 807, 817 (9th Cir. 1995) (noting that curative actions by trial court when confronted by improper comments "are usually presumed to neutralize damage such that any error was harmless"), overruled on other grounds by Tolbert v. Page, 182 F.3d 677 (9th Cir. 1999) (en banc).

Here, the court of appeal reasonably concluded that the prosecutor's comment regarding Juror No. 8's observations did not deprive petitioner of his right to due process or a fair trial. Although, as the court of appeal acknowledged, the prosecutor's comment was improper, there is no reason to believe that, under the circumstances, the jury would have disregarded the trial court's unambiguous admonition to disregard the comment. The prosecutor's comment was isolated and brief. Moreover, it drew an immediate objection, which was promptly sustained. The trial court, furthermore, admonished the jury that it could not consider any of the jurors' voir dire statements and ordered the jury to disregard the prosecutor's comment. That admonition left no doubt that the jury was not to consider Juror No. 8's observations. Further, as the court of appeal noted, in quoting Juror No. 8's voir dire statement -- a statement that all of the jurors had already heard firsthand -- the prosecutor did not imply that the jury should shirk its duty to weigh the evidence at trial. On the contrary, both the prosecutor and the trial court "reminded the jurors to evaluate the case based on the evidence and to keep an open mind during deliberations." (Lodgment No. 6 at 4).

Furthermore, in its instructions to the jury, the trial court made clear that the prosecutor's closing arguments were not evidence. Specifically, the trial court instructed the jury as follows:

> "Evidence" is the sworn testimony of witnesses, the exhibits admitted into evidence, and anything else I told you to consider as evidence. [¶] Nothing that the attorneys say is evidence. In their opening statements and closing arguments, the attorneys discuss the case, but their remarks are not evidence. . . . Do not assume that something is true just because one of the attorneys asked a question that suggested it was true. [¶] During the trial, the attorneys may have objected to questions or moved to strike answers given by the witness. I ruled on objections according to the law. If I sustained an objection, you must ignore the question . . . If I ordered testimony stricken from the record you must disregard it and must not consider that testimony for any purpose.

(CT 81). Given these circumstances, there is no reason to conclude that the jury ignored the trial court's admonition and instructions. Weeks v. Angelone, 528 U.S. 225, 234, 120 S. Ct. 727, 145 L. Ed. 2d 727 (2000) (noting that juries are presumed to follow trial court's instructions); see also Hall v. Whitley, 935 F.2d 164, 165-66 (9th Cir. 1991) (holding that prosecutor's improper comments were not prejudicial where comments consisted of isolated moments in three-day trial and where their effect was mitigated by trial court's instructions that closing arguments were not evidence).

Regardless, the prosecutor's brief, improper comment did not have a substantial and injurious impact on the jury's verdict. Again, the jury was unlikely to have considered the comment, given the trial court's admonition. But in any event, the prosecutor's comment could not have prejudiced petitioner in light of the evidence of his guilt. To be sure, as the court of appeal recognized, "identity was an important issue in this case";[2] however, the prosecutor presented substantial and compelling evidence that petitioner was the person who robbed the victim. Indeed, the victim identified petitioner as her assailant both at trial and in a photographic line-up. (Lodgment No. 6 at 2). Moreover, the victim identified the gun that petitioner had when he was arrested as looking similar to the gun that the assailant used in the robbery. (Id.). Although, as petitioner notes, the victim did not notice petitioner's facial tattoo, that fact was by no means fatal to the victim's identification because the robbery took place at 5:40 a.m., when there would be little or no sunlight, and the robber's face was partially covered. (See id. at 1-2).

---

[2] Lodgment No. 6 at 3.

This evidence, without more, would present a close case in terms of identification. But the prosecutor presented additional evidence that -- coupled with the victim's repeated identifications of petitioner -- left little question as to the identity of the assailant. Among the items stolen during the robbery were several of the victim's cards, including her Target card. (Id. at 1). When police later recovered the victim's Target card, they found a fingerprint on the card that matched petitioner's fingerprint. (Id. at 2). In light of that evidence and the victim's repeated identifications, there is no reason to believe either that the prosecutor's brief, improper comment impacted the jury's verdict or that the jury would have returned a different verdict had the comment not been made. See Hein, 601 F.3d at 916 (denying habeas relief despite prosecutor's improper vouching for witness, in part, because evidence against petitioner was strong).

In short, petitioner has not shown that he was deprived of any constitutional right to which he was entitled based on the prosecutor's brief comment regarding Juror No. 8's observations. Accordingly, the court of appeal's decision rejecting petitioner's prosecutorial misconduct claim was neither an unreasonable application of, nor contrary to, clearly established federal law as determined by the Supreme Court.

**CERTIFICATE OF APPEALABILITY**

Under Rule 11(a) of the Rules Governing § 2254 Cases, a court must grant or deny a certificate of appealability ("COA") when it denies a state habeas petition. See also 28 U.S.C. § 2253(c).

A petitioner may not appeal a final order in a federal habeas corpus proceeding without first obtaining a COA. See 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A COA may issue "only if . . . [there is] a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) (citation omitted); see also Sassounian v. Roe, 230 F.3d 1097, 1101 (9th Cir. 2000). Thus, "[w]here a

district court has rejected the constitutional claims on the merits, . . . [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack, 529 U.S. at 484.

The Court concludes that, for the reasons set out above, jurists of reason would not find the Court's assessment of petitioner's claim debatable or wrong. Accordingly, a certificate of appealability is **denied**. Petitioner is advised that he may not appeal the denial of a COA, but he may ask the Ninth Circuit Court of Appeals to issue a COA under Rule 22 of the Federal Rules of Appellate Procedure. See Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254.

## VI.

## ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Judgment is entered denying and dismissing the Petition with prejudice. A certificate of appealability is also denied.

DATED: March 7, 2016

*Paul L. Abrams*
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

12